**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **DELARGO L. GULLENS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20-cv-470-DWD** |
| | ) | |
| **TERRY GRISSOM,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

Petitioner Delargo L. Gullens, currently incarcerated at Vienna Correctional Center, is serving a thirty-year sentence for two drug-related offenses (Doc. 25-1, p. 1; Doc. 25-8, pp. 102-103).  He has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254.  For the reasons discussed below, the Court will deny his petition.

**Background**

For the purposes of habeas review, the Court presumes that the state courts' factual determinations are correct unless Petitioner rebuts this presumption by clear and convincing evidence, which Petitioner has not done. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002).  The following summary of the facts is derived from the state court opinions and is supplemented where appropriate from the state court

---

[1] The Clerk is **DIRECTED** to substitute Terry Grissom, current Warden of Vienna Correctional Center, as the Respondent in this action, and terminate Rob Jeffreys, pursuant to information provided in Respondent's Answer to Petition for a Writ of Habeas Corpus (Doc. 24).  *See* Federal Rule of Civil Procedure 25(d); *Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005) (proper respondent is the prisoner's current custodian).

record. *See People v. Gullens*, 2015 IL App (4th) 130357-U (Mar. 2, 2015) (Doc. 25-1) (affirming Petitioner's conviction on direct appeal); *People v. Gullens*, 2019 IL App (4th) 180483-U (July 1, 2019) (Doc. 25-3) (affirming the dismissal of Petitioner's post-conviction petition).[2]

### I.      Trial, Conviction, and Sentencing

At Petitioner's trial, the State presented testimony from several law-enforcement officials, and two individuals: Oliva Hester and Jeffrey Harris (Doc. 25-1, pp. 1-2).  The testimony revealed that on August 30, 2012, law-enforcement agents executed a search warrant on the residential trailer home owned by Olivia Hester (Doc. 25-1).  When police knocked on the front door and announced their presence, an officer—located at the rear of the home—observed Petitioner run from the front kitchen area into a rear bedroom (*Id.*).  Upon entering by force, police arrested three adults later identified as Petitioner, Jeffrey Harris, and Kayla Freeman (*Id.*).  Police seized 212 plastic bags holding a fine white powder from the kitchen countertop; the parties later stipulated that this was 15.7 grams of heroin (*Id.*).

Olivia Hester, the owner of the trailer home, testified that she lived in the trailer with Jeffrey Harris and his girlfriend, Kayla Freeman (Doc. 25-1, p. 2).  Hester met Petitioner in May 2012 and began selling Petitioner's heroin with Jeffrey Harris (*Id.*).  In exchange, Petitioner promised to pay Hester's monthly lot fee (*Id.*).  The heroin was not sold from Hester's home, although it was kept there, and packaging sometimes occurred

---

[2] Relevant portions of the state court record are attached as Doc. 25.

there (*Id.*).  At various times during August 2012, Hester heard Petitioner and Harris talking about heroin and observed them handling small plastic bags of heroin in her home (*Id.*).

Jeffrey Harris, who was arrested with Petitioner on August 30, 2012, testified that he was introduced to Petitioner in June 2012 by Petitioner's brother, Keith (Doc. 25-1, p. 2).  In July 2012, Harris moved into Olivia Hester's home (*Id.*).  Harris initially sold cocaine that Keith provided, but later sold heroin that Petitioner supplied (*Id.*).  Harris stored the heroin in Hester's home, and explained that Petitioner agreed to pay Hester's monthly rent in exchange for her allowing Harris to reside in her home (*Id.*).  Harris kept one third of the heroin-sale proceeds and gave Petitioner the remainder (*Id.*).  According to Harris, on August 30, 2012, he and his girlfriend, Freeman, and Petitioner arrived at Hester's home, where Harris observed 20 bags of heroin on the kitchen countertop (*Id.*).  Harris and Freeman went into a bedroom located at the front of Hester's residence (*Id.*)  After hearing a bang on the front door, Harris exited the bedroom and saw Petitioner sitting at the kitchen countertop with "many more bags of heroin than the 20 bags he had earlier observed" (*Id.*).  Petitioner ran into "the back room" of the trailer, and Harris was placed under arrest (*Id.*).  Harris stated that his involvement with Petitioner was to sell drugs, and that Keith and Petitioner "call[ed] the shots." (*Id.*).

During Harris' re-cross-examination by Petitioner's counsel, Stuart Goldberg, the following exchange took place:

[GOLDBERG]: Did you see the police when they came in the house?

[HARRIS]: Yeah.

[GOLDBERG]: And did you ever see them find a bag that you say my client mysteriously took out of a car?

[HARRIS]: First of all, I never said [defendant] had a bag.

[THE STATE]: Objection.

THE COURT: Hold on. Watch your questions. You are asking questions assuming facts not in evidence, and even the witness figured it out.

[GOLDBERG]: I was just getting dizzy. [Harris] keeps moving around.

THE COURT: Now that remark is stricken; and that is completely improper, counsel.

[HARRIS]: Come on, man.

[GOLDBERG]: * * * Did you have occasion on August 31st, 2012, at 5:35 hours to have an audio-videotaped interview on that day?

* * *

[HARRIS]: Yeah.

[GOLDBERG]: Did you have occasion to tell the officer that my client took a bag from that house, out of the car into the house?

[HARRIS]: They asked me was there anything—yeah.

[GOLDBERG]: You told an officer that my client brought something into that house?

* * *

[HARRIS]: They asked me what * * * happened that day, and I told them.

[GOLDBERG]: And you say my client brought a bag in the house?

[HARRIS]: No, I never said bag. * * * [Defendant] told me to pop the trunk; and [defendant] got something out of the trunk. I don't know what it was. How could I say it was a bag?

[GOLDBERG]: How could you say it was a bag to the 12 ladies and gentlemen now if you can't say it then?

4

THE COURT: Counsel approach.

[HARRIS]: I didn't say it was a bag.

* * *

(The following proceedings were had outside the hearing of the jury.)

THE COURT: [The court does not] know what the problem is, but you are saying stuff that was not testified to. There was never any testimony that [Harris] saw a bag being taken out of the trunk. That's about the fourth time you've asked [Harris], and he keeps correcting you. * * * [Harris] was asked and said I don't know what it was, but you keep asking him.

[GOLDBERG]: I thought I heard him say bag. I'll ask him.

THE COURT: Hold on. [The court does not] want one more improper question from you or [the court] will hold you in contempt. You are doing nothing but throwing garbage into this trial.

(The following proceedings were had in the presence and the hearing of the jury.)

THE COURT: The objection is sustained. You may ask another question."

(Doc. 25-1, pp. 2-3).

Following Harris' testimony, the State rested, and the jury was released for the remainder of the day. (Doc. 25-1, p. 3). After the jury left the courtroom, Petitioner moved for a directed finding, which the court denied (Doc. 25-1, p. 3). Petitioner's counsel addressed the Court: "[Y]our honor, in my entire career, I've never been threatened with contempt during a trial. I find that this has a very oppressing feeling on the defense for me trying to advocate for my client. I heard the word bag." (*Id.*). The Court responded:

[Y]ou are a much better lawyer than the questions that are coming out of your mouth today; and you were talking about evidence, or you are asking questions assuming facts that are not in evidence; and you did it a lot today; and [the court knows] darn well that you know better than that. So when you start asking questions assuming facts not in evidence, twisting

5

> evidence, twisting facts, twisting testimony, [the court is] going to get upset; and [the court is] going to make sure that you understand what the rules are. You crossed the line when you made that little comment about his testimony going back and forth. You know you crossed the line then about * * * Harris's testimony going back and forth. It's rolling all around. I can't keep track of his testimony.

(*Id.*).  Goldberg clarified "Oh, I meant his moving.  That's what I meant."  (Doc. 25-1, p. 4).  The Court explained that Goldberg's testimony implied that Harris was "going back and forth", and admonished Goldberg, telling him that "lines [were] being crossed" and that "[Goldberg was] better than that."  (*Id.*).

The next day Petitioner presented his case, during which Harris also testified about a telephone conversation he had with Petitioner through a third party on September 1, 2012 (*Id.*).  In that conversation, Petitioner told Harris that "You might as well take the bullet for this."  (*Id.*).  And with regard to Hester, Defendant told Harris to "throw that little bitch under the bus."  (*Id.*).  Petitioner further directed Harris to tell the police that Petitioner had no involvement with heroin, and that Petitioner was in the bathroom at the time police entered Hester's home to conduct their search.  (*Id.*).  As rebuttal evidence, the Government played a recording of the entire September 1, 2012 phone conversation between Petitioner and Harris (*Id.*).

The jury convicted Petitioner of possession with intent to deliver a controlled substance (15 grams or more but less than 100 grams of a substance containing heroin) and possession of a controlled substance (15 grams or more but less than 100 grams of a substance containing heroin) (Doc. 25-1, pp. 4-5).

On January 22, 2012, Petitioner filed a motion for a new trial (Doc. 25-1, p. 5; Doc. 25-7, pp. 108-111). Petitioner's counsel argued, in part, that Petitioner was not afforded a fair trial because of the Court's statements towards his counsel, which he described as "enmity and rancor." (Doc. 25-1, p. 5). The trial court denied Petitioner's motion finding that it was time barred in violation of the 30-day limit mandated in 725 ILCS 5/116-1(b) because the motion was filed 57 days after the jury's verdict (*Id.*; Doc. 25-7, pp. 117-125). The trial court also addressed the merits of Petitioner's arguments, finding that Petitioner received a fair trial, that the court was not hostile to defendant or his attorney, and that the court "treated both [State] and defense counsel with the same professional courtesies and impartiality that it always does while at the same time ensuring both parties followed the proper rules of evidence and procedure in regard to the admission of evidence." (Doc. 25-1, p. 5). On March 19, 2013, the trial court merged Petitioner's convictions and sentenced him to 30 years in prison (*Id.*; Doc. 25-7, p. 126).

## II.    Direct Appeal

Petitioner appealed his conviction and sentence and raised one issue on direct appeal: that he was denied a fair trial because of the trial court's comments to his defense counsel (Doc. 25-9, pp. 1, 2).[3] In his brief, Petitioner acknowledged that his posttrial motion first raising this issue was not timely filed, resulting in the forfeiture of the argument (Doc. 25-1, p. 5). However, he asked the Appellate Court to consider the claim under the plain-error doctrine, which the Appellate Court did (Doc. 25-1, p. 5). The

---

[3] Petitioner also filed a *pro se* Motion for Relief during the briefing on his direct appeal (Doc. 25-1, p. 5). In this motion, Petitioner argued his sentence was void because the trial court lacked subject-matter jurisdiction (*Id.*). However, at oral arguments, Petitioner abandoned this argument on direct appeal (*Id.*).

Appellate Court "reject[ed] any notion that the evidence presented in this case was closely balanced" reasoning that the:

> [T]estimony provided by Harris and Hester—both of whom testified without being promised any favorable consideration—the jury could have found beyond a reasonable doubt that on August 30, 2012, defendant (1) possessed 15.7 grams of heroin and (2) was in charge of a distribution scheme in which he solicited the services of (a) Harris to sell the heroin and (b) Hester to provide a base of operations from which he could package and store the heroin.  Indeed, the jury could have also reasonably inferred defendant's culpability based on his own words during his September 2012 conversation with Harris, in which defendant pressured Harris to (1) accept sole responsibility for this heroin seized, (2) confirm Hester's guilty, and (3) falsify defendant's location within the home in a failed attempt to avoid the State's charges.

(Doc. 25-1, p. 6).   The Appellate Court then concluded that the record in the case confirmed that Petitioner received a fair trial and that the trial court did not harbor a hostile attitude toward Petitioner or his trial attorney (*Id.*).  The Appellate Court further observed that no plain error occurred because the trial court's comments to Petitioner's attorney occurred outside of the jury's presence (*Id.*).

Petitioner filed his Petition for Leave to Appeal (PLA) the Appellate Court's order affirming his conviction (Doc. 25-5).  The PLA raised one point for reversal:

> The Appellate Court erred in not considering petitioner's argument that a reasonable person could infer from the trial judge's comments toward the petitioner's attorney on November 26th and 27th, 2012, that she had communicated with other people about the petitioner's attorney, at a minimum, without the presence of either the petitioner or his attorney, thereby creating the appearance of *ex parte* communications, the appearance of impropriety, and, consequently, the need for a new trial.

(Doc. 25-5, p. 2). On September 30, 2015, the Illinois Supreme Court denied Petitioner's PLA (Doc. 25-2).

### III.     State Postconviction Proceedings

In March 2016, Petitioner filed a *pro se* postconviction petition (Doc. 25-3, p. 1). The trial court advanced the postconviction petition to a second stage, and counsel was appointed (*Id.*).  Petitioner's counsel amended his petition, asserting the following claims: (1) ineffective assistance of counsel and (2) actual innocence based on new evidence (*Id.*). Petitioner argued that his trial counsel was ineffective because his attorney: (a) was rude to the court, (b) failed to visit him while in custody, (c) failed to show him discovery prior to trial, (d) mispronounced his name during trial, and (e) mispronounced the name of a city during trial (Doc. 25-3, p. 5).

The trial court conducted evidentiary hearings in September 2017 and May 2018 (Doc. 25-3, pp. 1-2).  At these evidentiary hearings, Olivia Hester testified that she had not been truthful at Petitioner's jury trial (Doc. 25-3, p. 2).  Specifically, Hester testified that Petitioner was not involved with any drug activity, and that Harris was the person selling heroin out of her trailer (*Id.*).  Hester also testified that an individual named Richard Felton was at her trailer in August 2012 "with enough frequency that he had an opportunity to supply drugs to Harris."  (*Id.*).  Hester also testified that she had been pressured to implicate Petitioner by Randy Yedlinak, the original prosecutor in Petitioner's trial, and Jeff Hamilton, a Sergeant at the Livingston County Sherriff's Office (*Id.*).  Finally, Hester claimed that Harris threatened her before trial and coerced her into testifying against Petitioner (*Id.*).  On cross-examination, Hester conceded that Petitioner was the father of her child, although she did not know that at the time of Petitioner's trial

(*Id.*).  Hester also stated that she had sold heroin in August 2012 and had given a recorded statement to the police that was consistent with her testimony at trial (*Id.*).

Richard Felton, Randy Yedinak, and Jeff Hamilton also testified (*Id.*).  Felton was serving a 75-year consecutive prison sentence for attempted murder and home invasion (*Id.*).  Felton testified that he packaged and sold the heroin that the police found in Hester's trailer, and stated that Petitioner did not assist him with his heroin sales (*Id.*).  Felton also claimed that he was at Hester's trailer "an hour or so before they had raided the house." (*Id.*).  On cross-examination, Felton had difficulty describing the logistics of his alleged heroin operation (*Id.*).

Yedinak and Hamilton testified that they did not pressure Hester into implicating Petitioner (*Id.*).  Yedinak also testified that Hester gave a recorded statement prior to trial which was consistent with her trial testimony, and which he would have used to impeach Hester had she changed her testimony at trial (*Id.*).  Yedinak also stated that Hester was facing criminal charges at Petitioner's trial (*Id.*).  Hamilton testified that he conducted surveillance on Hester's trailer "numerous times on different dates" prior to executing the search warrant in April 2012 (*Id.*).  Hamilton testified that he never saw Felton at Hester's trailer, although it was possible that Felton was at the trailer when he was not conducting surveillance (*Id.*).

In June 2018, the trial court entered a written order denying Petitioner's amended postconviction petition (25-3, p. 3).  The trial court found that Hester "was not a credible witness", reasoning that her new testimony was "not consistent" with the other evidence presented at the evidentiary hearing or with the trial evidence, and that Hester was a

biased witness because Petitioner is the father of her child. (*Id*.).  The trial court further found it "simply not credible" that Harris, Yedinak, or Hamilton coerced Hester into testifying against Petitioner (*Id*.).  The trial court also found that Felton and Petitioner were not credible witnesses, and that Hamilton and Yedinak's testimonies were credible and consistent with the trial evidence (*Id*.).  In sum, the trial court concluded that Petitioner failed to meet his burden on his actual innocence claim (*Id*.) and also rejected Petitioner's ineffective-assistance-of-counsel claim:

> [D]efendant has failed to demonstrate how the outcome would have been any different had defense counsel used a different style during the trial or spent more time preparing the case with defendant. Most of defendant's complaints are speculative * * *. There is no evidence that * * * the result would have been any different. * * * [T]he evidence against defendant was overwhelming and very compelling with multiple eyewitness accounts. * * * Moreover, defendant has provided only his own self-serving statements concerning the level of preparation for the trial.

(*Id*.).

Petitioner appealed the denial of his postconviction petition.  On appeal, Petitioner argued that he was actually innocent, and that his trial counsel was ineffective because he (a) was unprepared, (b) mispronounced the name of a town, (c) failed to show to a pretrial hearing, (d) called Petitioner the wrong name in front of the jury, (e) was rude to the Court, (f) never saw discovery prior to trial, (g) did not visit Petitioner in jail prior to trial, and (h) failed to timely file a motion to reconsider his sentence (Doc. 25-12; Doc. 25-3, p. 5).  On July 1, 2019, the Illinois Appellate Court for the Fourth District affirmed the trial court's denial of Petitioner's postconviction petition (Doc. 25-3, p. 1). The Appellate Court rejected Petitioner's ineffective assistance of counsel arguments because defendant

11

failed to demonstrate prejudice by not showing "a nexus between counsel's allegedly deficient performance and how the result of the proceeding would be different." (Doc. 25-3, p. 5).

The Appellate Court also rejected Petitioner's actual innocence claim, finding that Petitioner "failed to introduce evidence of such conclusive character that it would probably change the result on retrial." (Doc. 25-3, pp. 5-6). The Appellate Court reasoned that Hester's recantation testimony was unreliable because "she learned that [Petitioner] was the father of her child *after* [Petitioner] was convicted", and her testimony was inconsistent with the evidence presented at Petitioner's trial and was further contradicted by Yedinak and Hamilton's credible testimony (Doc. 25-3, p. 5). The Appellate Court also reasoned that Felton's testimony was suspect "because he admitted to manufacturing heroin *after* he was convicted of a different crime and sentenced to a *de facto* life sentence." (*Id.*). On September 25, 2019, the Illinois Supreme Court denied Petitioner's Leave to Appeal the denial of his postconviction petition (Doc. 25-4).

In April 2020, Petitioner filed a Motion for Supervisory Order with the Illinois Supreme Court (Doc. 17).[4] The Motion alleged the following errors: (1) that his trial counsel was ineffective for failing to object to certain evidence admitted at trial; (2) there was insufficient evidence to convict petitioner; (3) direct appeal counsel was ineffective; (4) the trial judge's comments to defense counsel showed bias and denied petitioner a fair trial; and (5) his sentence is void and unconstitutional (Doc. 17-1 at p. 2). The Illinois

---

[4] Petitioner filed a duplicate copy of this Motion and Memorandum with this Court (Doc. 17).

Supreme Court denied Petitioner's motion on September 29, 2020.  *See Delargo L. Gullens, v. People State of Illinois. Supervisory Order*, Ill. M.D. 014474 (Sept. 29, 2020)[5].  Petitioner did not file a petition for a writ of certiorari with the United States Supreme Court but filed his federal habeas petition with this Court.

## Legal Standard

A habeas petitioner is entitled to a writ of habeas corpus if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court, or if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court]." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000).  An "unreasonable application" of federal law occurs if the state court correctly identified the legal rule but unreasonably applied the controlling law to the facts of the case.  *See id.* at 407.

## Analysis

The only claim Petitioner asserts in his Petition (Doc. 1) is an actual innocence claim.  However, he raises five additional claims in his Motion for Supervisory Order

---

[5]This Order is available at https://www.illinoiscourts.gov/resources/25ec8cf3-35c1-44a4-a85e-413895a09d0c/file (last visited Sept. 1, 2021).  In its entirety, the Order reads: "The motion by movant for a supervisory order is <u>denied</u>."

(Doc. 17).  Respondent concedes that the Petition is timely (Doc. 24, p. 9), and does not argue that Petitioner's actual innocence claim is unexhausted or procedurally defaulted (Doc. 24, p. 10).  However, Respondent objects to the additional claims raised in Petitioner's Motion, arguing that that the Motion is not a proper amendment and the claims raised are untimely (Doc. 24).  Alternatively, Respondent argues that the claims raised in Petitioner's Motion are procedurally defaulted because Petitioner failed to present these claims through one complete round of the state's established appellate review process (Doc. 24, pp. 14-15).

Here, the Court is mindful that it must construe a petitioner's *pro se* filings liberally.  *See Frazier v. Varga, 843 F.3d 258, 262-63 (7th Cir. 2016); Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004) (citing *Jackson v. Duckworth*, 112 F.3d 878, 881 (7th Cir. 1997) (finding a cognizable claim when a *pro se* petition includes "enough detail to describe a claim that is within the power of a federal court to address.").  The five additional grounds raised in Petitioner's Motion for Supervisory Order provide enough detail to suggest they are within the power of this Court to address.  Accordingly, the Court will construe the Motion for Supervisory Order and Memorandum (Doc. 17) as a supplement to the Petition (Doc. 1) and will review those claims as detailed below.  The Court understands Petitioner's claims to present the following grounds for relief:

**Ground 1**: Petitioner is actually innocent;

**Ground 2**: There was insufficient evidence to convict Petitioner;

**Ground 3**: Trial counsel was ineffective;

**Ground 4**: Trial court's comments to defense counsel denied Petitioner a fair trial;

**Ground 5**: Direct appeal counsel was ineffective; and

**Ground 6**: Petitioner's sentence is void and unconstitutional.

Further, because the grounds in Petitioner's Motion fail easily on the merits or are procedurally defaulted, the Court will not address the timeliness of the additional claims in this Order. *Thompson v. Locke*, 2015 WL 5159976, at * 3 (N.D. Ill. Sept. 1, 2015) (Declining to engage in a timeliness analysis because petitioner's additional claims are procedurally defaulted) (collecting cases); *United States ex rel. Harris v. Yurkovich*, 2012 WL 6591639, at *4, ft. 5 (N.D. Ill. Dec. 14, 2012) (Declining to consider timeliness of petition because the petition fails on the merits). As further detailed below, Grounds 2-6 are procedurally defaulted, and Ground 1 is not a cognizable claim in this Court.

## I.    Procedural Default

Respondent argues that Petitioner procedurally defaulted Grounds 2-6 because he did not present them through one complete round of state court review. "A federal court may not grant an application for a writ of habeas corpus from a prisoner being held in state custody unless the petitioner has exhausted his available state remedies prior to federal habeas relief." *Gonzales v. Mize*, 565 F.3d 373, 380 (7th Cir. 2009) (citing 28 U.S.C. § 2254(b)(1)(A)). This doctrine "serves the interests of federal-state comity by giving states the first opportunity to address and correct alleged violations of a petitioner's federal rights." *Id.* (citing *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007). Therefore, a petitioner must fairly present his claims through "one complete round of state-court review, either on direct appeal or in post-conviction proceedings." *Id.* (citing *Malone v.*

*Walls*, 538 F.3d 744 (7th Cir. 2008); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). When a petitioner has failed to present his federal claim to the state courts and the opportunity to raise that claim has subsequently passed, the petitioner has procedurally defaulted the claim and it is not available for federal habeas review. *Id.* at 380 (citing *Lewis*, 390 F.3d at 1026); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (Where petitioners have already pursued state-court remedies and there is no longer any state corrective process available to him, it is not the exhaustion that stands in the path to habeas relief but rather procedural default).

In Illinois, to fairly present a claim through one complete round of state court review, Petitioner must have appealed the issue up to and including the filing of a PLA to the Illinois Supreme Court. *O'Sullivan*, 526 U.S. at 845–46; *Lewis*, 390 F.3d at 1025-26 ("petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory."); *Duncan v. Hathaway*, 740 F. Supp. 2d 940, 945 (N.D. Ill. 2010).

Petitioner did attempt to raise Grounds 2-6 by seeking extraordinary relief in the Illinois Supreme Court.  However, the Court has no reason to believe that the Illinois Supreme Court's Order denying Petitioner's motion for a supervisory order was a ruling on the merits of Petitioner's postconviction claims, such that these claims were properly exhausted through a full round of state-court review. *See, Dupree v. Jones,* 281 Fed. App'x 559, 560 (7th Cir. 2008) (citing *Crump v. Lane,* 807 F.2d 1394, 1395 (7th Cir.1986) ("A prisoner who does nothing more after being turned away by the supreme court has not pursued a *full round* of state-court review.") (emphasis in original); *see also Castille v.*

*Peoples*, 489 U.S. 346, 351 (1989) (unsuccessful request for discretionary leave to file original action in supreme court does not properly exhaust claim unless court expressly reviews merits).

Nevertheless, the time for Petitioner to raise these claims has now passed, and Petitioner is time barred from further pursuing the alleged constitutional errors in a state post-conviction proceeding. *See* 725 ILCS 5/122-1(c); *see also O'Sullivan*, 526 U.S. at 844 (holding that repetitive petitions are not required). Thus, petitioner has cleared the first procedural hurdle, exhaustion. However, as further detailed below, Grounds 2-6 are procedurally defaulted because Petitioner did not properly assert his claims at each level of state court review, or the claims were resolved on an adequate and independent state-law basis. *Gonzales*, 565 F.3d at 380; *Perruquet*, 390 F.3d at 514.

### *Ground 2: Insufficient Evidence*

Petitioner argues that there was insufficient evidence to implicate him at trial because the testimony offered by Harris and Hester was impeached, uncorroborated, and only offered after Harris and Hester signed proffered contracts with the Government (Doc. 17-1, pp. 19-21). Petitioner also states that it was error to admit the recorded phone call, without providing argument as to why the evidence should not have been admitted (Doc. 17-1, pp. 20). Petitioner did not raise this specific argument on direct appeal or in his postconviction proceedings, although this ground closely relates to his arguments that he was denied a fair trial, which he argued on direct appeal, and is actual innocence claim, which was adjudicated in his postconviction proceeding.

However, in order to fairly present a claim to the state courts, Petitioner must make clear to the state courts that he is seeking review of a constitutional claim. *See Malone v. Walls*, 538 F.3d 744, 754 (7th Cir.2008). It "is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 7 (1982). Instead, Petitioner must "set forth not only the factual basis for his claim, but also the operative legal standard for evaluating the facts presented" by citing the appropriate federal standards and cases and detailing specific facts. *Malone*, 538 F.3d at 754; *see also White v. Gaetz*, 588 F.3d 1135, 1139 (7th Cir.2009). That was not the case here.

Petitioner did not raise a sufficiency of the evidence claim on direct appeal or in his postconviction petition. Further, there is nothing in Petitioner's briefs or the state courts' decisions to suggest that Petitioner was presenting a sufficiency of the evidence claim to the Illinois courts. Although the Illinois Appellate Court made statements concerning the evidence at Petitioner's trial so to suggest that the evidence in his case was indeed sufficient, *see* Doc. 25-1, p. 6, these statements were rooted in the Court's plain error analysis. The Seventh Circuit has "repeatedly explained that where a state court reviews the claim for plain error as the result of a state procedural bar such as the Illinois doctrine of waiver, that limited review does not constitute a decision on the merits." *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010). Therefore, Petitioner did not fairly present, and it is clear the Illinois courts did not understand, that Petitioner was presenting a sufficiency of the evidence claim (or any other state, federal, or constitutional claim) for

18

review apart from his fair trial and actual innocence claims.  As such, Ground 2 is procedurally defaulted.

### Ground 3: Trial Counsel was Ineffective

Petitioner argues that his trial counsel was ineffective because he (1) "repeatedly failed to object to improper, inadmissible, irrelevant, excludable, and prejudicial evidence" and "failed to request proper jury instructions" (Doc. 17-1, p. 3).  Petitioner did not raise these arguments on direct appeal or in his postconviction proceedings.[6]  In his Motion for Supervisory Order (Doc. 17-1) Petitioner states that his direct appeal counsel failed to raise these issues on appeal, and that he tried to raise these issues in his postconviction proceeding but his postconviction counsel chose to present different issues instead (Doc. 17-1, p. 3).  The Court finds that Petitioner has procedurally defaulted his ineffective assistance claim based on these alleged errors.  *See Snow v. Pfister*, 880 F.3d 857, 865 (7th Cir. 2018) (Claims of ineffective assistance are procedurally defaulted where the specific allegations of counsel's errors were not included in a petition for leave to appeal).

### Ground 4: Trial Court's Comments to Defense Counsel

Petitioner argues that the exchange between his trial counsel and the circuit court (*see supra*, pp. 4-7) denied him a fair trial.  Specifically, Petitioner contends that the trial court was biased against him, and the "cumulative effect of [his trial counsel's]

---

[6] Petitioner did assert some other ineffective assistance claims during his postconviction proceedings. Specifically, Petitioner argued that his trial counsel: (a) was rude to the court, (b) failed to visit him while in custody, (c) failed to show him discovery prior to trial, (d) mispronounced his name during trial, and (e) mispronounced the name of a city during trial (Doc. 25-3, p. 5).  However, Petitioner did not assert these issues in his habeas petition, and those claims are beyond this Court's review.

ineffectiveness and the circuit court's advocacy for the Respondents and comments substantially prejudice me." (Doc. 17-1, p. 24). Petitioner raised part of this argument in a post-trial motion and on direct appeal. Specifically, Petitioner argued that the trial court's comments to his trial counsel denied him a fair trial. However, the trial court rejected this argument because it was late, before finding on the merits that Petitioner received a fair trial (Doc. 25-1, p. 5)[7]. The Appellate Court agreed, and further found that the alleged error could not support a reversal because the court's comments occurred outside of the jury's presence (Doc. 25-1, p. 6).

If a state court declines to review a claim because the petitioner failed to satisfy a state procedural rule, the claim is procedurally defaulted and barred from federal habeas review if the default constitutes an independent and adequate state ground. *Perry v. McCaughtry*, 308 F.3d 682, 688, 690-691 (7th Cir. 2002); *Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000); *Pisciotti v. Washington*, 143 F.3d 296, 300 (7th Cir. 1998). Further, where the state court issues an alternative ruling, relying on both procedural and substantive grounds, the procedural ground bars federal habeas review. *Moore v. Bryant*, 295 F.3d 771, 776 (7th Cir. 2002); *see Harris v. Reed*, 489 U.S. 255, 265 (1989). Here, the state court's procedural ruling on the untimeliness of Petitioner's claim is an independent and adequate state ground that is firmly established and regularly followed. *See Smith v. McKee*, 598 F.3d 374, 383 (7th Cir. 2010); *Brooks v. Walls*, 279 F.3d 518, 523-24 (7th Cir. 2002). As such, this claim is procedurally defaulted, even though the state courts issued an

---

[7] Petitioner's brief on direct appeal acknowledged that he had forfeited this argument because his posttrial motion was not timely filed (*See* Doc. 25-1, p. 5).

alternative ruling relying on substantive grounds.  *Moore*, 295 F.3d at 776; *Braun*, 227 F.3d at 912; *see also Gray*, 598 F.3d at 329 (Where state court reviews for plain error as part of waiver analysis, is not a decision on the merits).

Further, even if this claim was not procedurally defaulted, this Court is constrained to agree with the state courts' analysis of this issue. The state courts' analysis was thorough and reasonable, and this Court agrees with the state courts' conclusions that the trial court's comments to Petitioner's counsel could not support reversal because the comments occurred outside of the jury's presence.  When considered in light of the other evidence in the record, Petitioner's arguments would not have made it more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. Given the previously detailed evidence that was before the jury, this Court cannot say the state courts' decision on this issue was objectively unreasonable or outside the boundaries of fair-minded jurists' range of opinion. The state court applied the correct standard here and its application of established precedent was reasonable.  Accordingly, Ground 4 does support habeas relief.

### Ground 5: Direct Appeal Counsel was Ineffective

Petitioner did not raise Ground 5 in his direct appeal or during his postconviction proceedings.  In his Motion for Supervisory Order, Petitioner states that he tried to raise this issue during his postconviction proceedings, but his postconviction counsel chose to bring different issues in those proceedings instead (Doc. 17-1, p. 3).  Accordingly, Petitioner did not fairly present Ground 5 to the Illinois Courts, and it is procedurally defaulted.  *See Snow*, 880 F.3d at 865.

### *Ground 6: Void and Unconstitutional Sentence*

Petitioner argues that his sentence is void and unconstitutional.  Petitioner briefly argued that his sentence was void for a lack of subject-matter jurisdiction in a *pro se* postconviction motion filed before the oral arguments in his direct appeal (Doc. 25-1, p. 5).  However, at oral arguments, Petitioner abandoned this argument on appeal, so the appellate court did not address this issue (*Id.*).   As with Ground 4 above, if a state court declines to review a claim because the petitioner failed to satisfy a state procedural rule, the claim is procedurally defaulted and barred from federal habeas review if the default constitutes an independent and adequate state ground.  *Perry*, 308 F.3d at 688, 690-691 (7th Cir. 2002); *Braun*, 227 F.3d at 912; *Pisciotti*, 143 F.3d at 300.  Here, the Appellate Court clearly held that Petitioner abandoned this issue.  Abandonment resulting in waiver is an independent and adequate state ground under Illinois law. *See United States ex rel. Easley v. Hinsley*, 305 F.Supp.2d 867, 883 (N.D. Ill. 2004).   Therefore, Ground 6 is also procedurally defaulted.

## II.     Excuse of the Defaults

Petitioner may nonetheless pursue a procedurally defaulted claim if he can establish cause for the default, and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that the Court's failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750, (1991); *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n.24, (1999) (internal

citation and markings omitted); *Lewis*, 390 F.3d at 1025.  Prejudice exists where the petitioner shows that the violation of his federal rights "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170, (1982)).

The fundamental miscarriage of justice exception is "limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). This requires new, reliable evidence of the petitioner's innocence in light of which "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "This standard is fundamentally different, and lower, than that for a substantive innocence claim because the procedural claim of innocence is accompanied with an assertion of constitutional error at trial." *Coleman v. Hardy*, 628 F.3d 314, 319 (7th Cir. 2010) (citation and internal markings omitted).

Petitioner does not argue cause and prejudice. However, he does assert an actual innocence claim based on the same evidence he presented during his postconviction proceedings.  In sum, Petitioner argues that Hester's and Felton's testimony show that the heroin in this case was not his; and therefore, he is actually innocent.  An actual innocence claim requires new, reliable evidence of innocence so persuasive that "no juror, acting reasonably, would have voted to find [the petitioner] guilty beyond a reasonable doubt." *Woods*, 589 F.3d at 377.  The Court cannot say that no reasonable jury would find

Petitioner guilty even with this testimony from Hester and Felton, particularly in light of the other evidence in the record, including Petitioner's phone call to Harris.

Further, this testimony does not rise to the level of "documentary, biological (DNA), or other powerful evidence" that can overcome the procedural default in this case. *See Hayes v. Battaglia*, 403 F.3d 935, 937–38 (7th Cir. 2005) (six additional alibi witness affidavits not sufficient to support an actual innocence claim against six prosecution witnesses); *see also Smith v. McKee*, 598 F.3d 374, 388 (7th Cir. 2010) (finding affidavits of two witnesses—one of whom testified that petitioner was not the shooter and the other gave him an alibi—was not enough to support an actual innocence claim over two eyewitnesses and a self-incriminating statement); *Carter v. Ryker*, 2011 WL 589687, at *6 (N.D. Ill. Feb. 9, 2011) (affidavit from shooter that petitioner was not involved (among other new evidence) was not enough for actual innocence, when petitioner presented same defense at trial).

Accordingly, Petitioner's procedural default of these five claims is not excused by this new evidence. Petitioner has defaulted Claims 2-6, and they are unreviewable by this Court.

### III.     Ground 1: Actual Innocence

Petitioner also brings a separate claim of actual innocence based on Felton's affidavit and the testimony from Felton and Hester presented during his state postconviction hearings. Respondent argues that the Seventh Circuit does not recognize claims of actual innocence based on newly discovered evidence. Alternatively, Respondent argues that because the Illinois Appellate Court rejected Petitioner's actual

innocence claim on the merits, and the United States Supreme Court has not yet decided whether actual innocence implicates a constitutional right, the state court cannot be said to have unreasonably applied clearly established federal law under § 2254(d)(1). Finally, Respondent argues that Petitioner cannot meet the high standard that the Supreme Court has suggested would apply in actual innocence cases, if such claim was recognized here.

In *Herrera v. Collins*, the Supreme Court held that a claim of actual innocence based on newly discovered evidence is not "a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera*, 506 U.S. 390, 400 (1993). Since *Herrera,* the Supreme Court has "struggled with" the question of whether a "freestanding claim" of actual innocence can be the basis for federal habeas relief. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence."); *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009) ("Whether such a federal right exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo*, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet.").

However, courts in this Circuit recognize *Herrera* and routinely reject actual innocence claims. *See Newkirk v. Anglin*, 2014 WL 2110224, at *3 (N.D. Ill. May 20, 2014) ("[T]he Supreme Court has concluded that actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." (internal

quotation marks omitted)); *United States ex rel. Newell v. Chandler*, 2009 WL 3366971, at *2 (N.D. Ill. Oct. 15, 2009) ("A free-standing claim of actual innocence, as Petitioner asserts in ground one, is not itself a constitutional claim cognizable on *habeas* review."); *Milone v. Camp*, 22 F.3d 693, 700–01 (7th Cir. 1994) (noting, "[t]he Supreme Court appears willing to hold that it is unconstitutional to execute a legally and factually innocent person, while at the same time suggesting that the petitioner's evidentiary burden in such a case would necessarily be extraordinarily high" (internal citations and quotations omitted)). Although a claim of actual innocence may sometimes excuse procedural default, as discussed above, it does not stand as its own claim for federal habeas relief. Therefore, the Court cannot review Petitioner's claim of actual innocence.

## Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Petitioner need not show that his appeal will succeed, *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003), but he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Id*. at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

For the reasons detailed above, the Court has determined that Petitioner has not stated any grounds for habeas relief. No reasonable jurist would find it debatable whether this Court's rulings on procedural default or on the substantive issues were correct. Accordingly, the Court **DENIES** a certificate of appealability.

<u>Conclusion</u>

For the above stated reasons, Petitioner's Petition (Doc. 1, Doc. 17) under 28 U.S.C. § 2254 is **DENIED**.  This cause of action is **DISMISSED with prejudice**.  The Clerk of Court shall enter judgment accordingly.

 **SO ORDERED.**

 Dated: September 7, 2021

_____
DAVID W. DUGAN
United States District Judge